IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ROADGET BUSINESS PTE. LTD., a private limited company organized in the country of Singapore,<br><br>*Plaintiff,*<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO<br><br>*Defendants*. | Case No. 1:24-cv-1088-CMH-WEF |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS, OR ALTERNATIVELY, TO COMPEL ARBITRATION AND STAY THE ACTION**

Defendant Shenzhen Chenhong Technology Co., Ltd. (Defendant No. 1 on "Schedule A" to the Complaint, dba "SZCH") submits this Memorandum in Support of Motion to Dismiss for Insufficient Service of Process, or Alternatively, to Compel Arbitration and Stay the Action.

I.  **INTRODUCTION**

The Court should dismiss this case on the grounds of improper service of process, or alternatively, compel the case to arbitration pursuant to the Terms and Conditions (Terms) governing the Shein website.

First, rather than complying with the Hague Convention's service-of-process requirements, Roadget purported to serve the Complaint and Summons on Defendant by email. To be sure, the Hague Convention governs service in this case—Defendant is a Chinese company whose address is publicly available—and email is not a permissible means of service under the Hague Convention for Chinese companies. Therefore, Roadget's purported service by email was improper.

Second, Roadget's theory of infringement against Defendant reveals that this case is subject to the Terms governing access to the Shein website, which requires arbitration of the parties' dispute. Specifically, Roadget alleges that Defendant appropriated the copyrighted photographs from Roadget's Shein website. Defendants' alleged access to the Shein website, in turn, is expressly governed by the Terms, and the Terms require any dispute arising out of such access to be submitted to arbitration. Therefore, this case belongs in arbitration.

In sum, the Court should either dismiss this action based on improper service of process, or alternatively, the Court should stay the case and compel arbitration of this dispute.

II.  **FACTUAL AND PROCEDURAL BACKGROUND**

Roadget initiated this copyright infringement action and immediately sought an *ex parte* TRO seeking to restrain Defendant from using certain photographs from the Shein website and seeking an indefinite freeze of Defendant's assets. *See* ECF Nos. 1, 13, 14. Roadget's infringement theory is that Defendant accessed the Shein website to appropriate the photographs. *See* ECF No. 1 at ¶ 21; ECF No. 14 at 5 ("Defendants had access to the Roadget Copyrights because they were

publicly displayed in products sold on the SHEIN website and/or app."); ECF No. 31 at 6 (same); *see also* July 8, 2024 TRO Hearing Tr. at 5:15–17 ("SHEIN is an incredibly popular website. And it's become fashionable - no pun intended - to rip off their copyrights and designs.").

The Shein website, in turn, is governed by the Shein website Terms and Conditions (Terms), which require arbitration of disputes in Singapore (where Roadget is incorporated). *See* Reilly Decl., Ex. A at § 1.1 ("By accessing or using the Services in any manner, including, but not limited to, visiting or browsing the Site . . . , you expressly . . . agree to be bound by such terms found on the Site."); § 1.3 ("Any accessing, browsing, or otherwise using the Services indicates your agreement to all the terms and conditions in this Agreement."); § 12 ("Any dispute arising out of or in connection with this agreement and the use of the Services, including any question regarding its existence, validity or termination, shall be referred to and finally resolved by arbitration administered by the Singapore International Arbitration Centre in accordance with the Arbitration Rules of the Singapore International Arbitration Centre for the time being in force, which rules are deemed to be incorporated by reference in this clause.").

In response to Roadget's *ex parte* motion for TRO, the Court granted the "use" injunction, denied the asset freeze, and set a PI hearing. *See* ECF No. 25. Roadget thereafter moved the Court to renew its asset freeze request, extend the TRO for 14 days, and continue the PI hearing for 14 days. *See* ECF No. 27. Defendant then entered an appearance (through counsel) to oppose the TRO asset freeze and the yet-to-be-filed PI motion, and in doing so, Defendant expressly noted that its appearance was "under a full reservation of procedural and substantive rights," ECF No. 33 at 1, such as challenges to jurisdiction, service of process, or the like. *See also* Aug. 2, 2024 PI Hearing Tr. at 7:4–9 (counsel for Defendant expressly objecting to jurisdiction and effective service at the PI hearing: "This is without service of process. There's still been no rule for service of process of

3

my client. The Court has not yet, therefore, asserted jurisdiction over my client."). The Court thereafter granted Roadget's request to extend the TRO and continue the PI hearing, but the Court denied Roadget's renewed request for an asset freeze. *See* ECF No. 41.

Thereafter, Roadget's motion for PI asked the Court to "convert the TRO into a preliminary injunction, so that Defendants are enjoined during this case from infringing Roadget's copyright, and so that their accounts remain frozen during the case." ECF No. 31 at 1. To be sure, nowhere in Roadget's TRO briefing did Roadget ask for leave to accomplish service of process by email. Likewise, nowhere in Roadget's motion for PI or supporting brief did Roadget request leave to serve by email. Thus, Defendant opposed issuance of the two injunction requests made in Roadget's motion for PI: the photo-use injunction and the asset freeze. The Court granted the photo-use injunction but denied Roadget's third request for an asset freeze. *See* ECF No. 51. However, as Defendant is now aware after seeing the Court's PI order, Roadget discreetly included a new email-service clause in the proposed order (a new clause not included in the TRO Roadget was seeking to "convert"), which the Court ultimately adopted in the PI order. *See* ECF No. 51 at ¶ 3.

Roadget's apparent tactic of silently adding the email-service clause in the proposed order and briefing the motion for PI as if it were a standard TRO-conversion motion would seem to contravene this Court's Local Rules. Specifically, the rules require that a motion itself must "state with particularity" the grounds and relief sought, *see* Local Civil Rule 7(A) ("Grounds and Relief to be Stated: All motions shall state with particularity the grounds therefor and shall set forth the relief or order sought."), and the brief in support of the motion must "set[] forth a concise statement of the facts and supporting reasons, along with a citation of the authorities upon which the movant relies." Local Civil Rule 7(F). Roadget provided no indication in its Local Rule 7 "motion" or "brief" to indicate a request for email service, let alone "facts and supporting reasons" or

4

"authorities" supporting an email-service request. To the contrary, Roadget's PI motion asserted only that the requested relief was "substantially the same" as the TRO except "with the additional request that Defendants' assets . . . be frozen." ECF No. 30 (motion for PI); *see also* ECF No. 31 (memorandum with no mention of requesting permission to serve by email). Nevertheless, the Court adopted Roadget's proposed order authorizing service by email, and subsequently, Roadget purported to accomplish service of process by email. *See* ECF No. 57 at ¶ 4 (purported email service on Sept. 3, 2024).

Defendant now moves for dismissal under Rule 12(b)(5) for insufficient service of process on the grounds that (1) service on a Chinese company whose address is known, such as Defendant, requires compliance with the Hague Convention, and (2) email is not a permitted means of service on a Chinese company under the Hague Convention. Alternatively, Defendant moves the Court to compel arbitration of this dispute pursuant to the Terms governing the Shein website.

### III. MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS

#### A. Legal Standard

The appropriate vehicle to challenge the sufficiency of service of process is by a motion to dismiss under Rule 12(b)(5). *See* Fed. R. Civ. P. 12(b)(5). Once challenged, the plaintiff bears the burden of proving lawful service under Rule 4. *See Scott v. Md. State Dep't of Labor*, 673 F. App'x 299, 304 (4th Cir. 2016) ("The plaintiff bears the burden of proving adequate service once a motion to dismiss for insufficient service of process has been filed pursuant to Fed. R. Civ. P. 12(b)(5)."); *Mayo v. Cnty. of Prince George Virginia*, No. 1:23-cv-00609, 2023 WL 4849938, at *3–4 (E.D. Va. July 27, 2023) ("Once a defendant seeks dismissal pursuant to Rule 12(b)(5), the burden then shifts to the plaintiff to establish the validity of service pursuant to Rule 4." (quotations omitted)).

### B. The Hague Convention Applies Because Defendant Is a Chinese Company and Its Registered Address Was Available to Roadget

Rule 4(f) governs service on a foreign company. It provides that service on a foreign company can be accomplished "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention" or "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f).

The Hague Convention "specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies." *Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017) (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988)). Here, Defendant is a Chinese company (ECF No. 43-2, 43-3), and China is a Hague Convention signatory; therefore, the Hague Convention requirements governs service-of-process in this case. *See Smart Study Co. v. Acuteye-US*, 620 F. Supp. 3d 1382, 1389 (S.D.N.Y. 2022) ("[B]ecause the defendants are located in China, a party to the Convention, the Hague Convention applies.").

Rule 4 is generally entitled to a "liberal construction" where "actual notice" has been provided; however, where the attempted service does not comply with the Hague Convention, the Court should dismiss the complaint and allow the plaintiff to attempt service again. *See United States ex rel. Walterspiel v. Bayer AG*, 639 F. App'x 164, 167 (4th Cir. 2016) (affirming dismissal for failure to serve in compliance with Germany's stipulations to the Hague Convention); *Sanyal v. Toyota Motor Corp.*, No. 1:14-cv-906, 2014 WL 4925842, at *1 (E.D. Va. Sept. 30, 2014) (quashing attempted service on Japanese company as non-compliant with the Hague Convention, and subsequently dismissing the case for failure to effect proper service, *see* ECF Nos. 17, 18); *ePlus Tech., Inc. v. Aboud*, 155 F. Supp. 2d 692, 701 (E.D. Va. 2001) (failure to serve Canadian citizens in compliance with Hague Convention warranted dismissal without prejudice).

6

While adherence to the Hague Convention can be avoided "where the address of the person to be served with the document is not known," Hague Service Convention art. 1, courts apply a "reasonable diligence" test to assess the plaintiff's efforts to ascertain the defendant's address. *See Luxottica Grp. S.p.A. v. Schedule A*, 391 F. Supp. 3d 816, 822 (N.D. Ill. 2019) (collecting cases) ("[T]he plaintiff must make reasonably diligent efforts to learn the defendant's mailing address."); *Smart Study*, 620 F. Supp. 3d at 1389 (applying "reasonable diligence" test); *Sec. & Exch. Comm'n v. Lahr*, No. 22-2497, 2024 WL 3518309, at *4–5 (3d Cir. July 24, 2024) (same).

Here, Roadget did not show diligence to learn Defendant's address. Indeed, Defendant's entity name and address were publicly available to Roadget at the time it filed suit and throughout these proceedings. *See* ECF No. 43-2 at ¶¶ 2, 3. Courts confirm that where the defendant's address is ascertainable, "[a] plaintiff cannot close its eyes to the obvious to avoid the Hague Service Convention." *Luxottica*, 391 F. Supp. 3d at 822 (evidence showing plaintiff had access to defendant's mailing address showed lack of diligence, resulting in dismissal for improper service after court previously authorized service by email); *see also Smart Study*, 620 F. Supp. 3d at 1391 (listing examples of "reasonable diligence," including searching the defendant's website and inquiring with the ecommerce platform provider).

Therefore, because Defendant is a Chinese company whose address is known and Roadget did not exercise reasonable diligence in ascertaining Defendant's address, Roadget was required to effect service of process in accordance with the Hague Convention.

### C. Email Service Is Not Permitted on Chinese Companies Under the Hague Convention

District courts across the country (including in this District) have repeatedly held that China's objection to Article 10 of the Hague Convention (governing service by mail) confirms that service of process by email on a Chinese defendant is improper under the Hague Convention. *See*

7

*Banilla Games, Inc. v. Guangzhou Crazy Software Tech. Co.*, No. 3:23-cv-183, 2023 WL 7413329, at *2 (E.D. Va. Nov. 9, 2023) ("[S]ervice via email or postal mail is prohibited because China has objected to Article 10 of the Hague Convention, which otherwise allows for such service." (citing *Smart Study*, 620 F. Supp. 3d at 1394–97 ("Simply put, the Hague Convention prohibits service by email on defendants located in China.")); *Luxottica*, 391 F. Supp. 3d at 822 (same); *Anova Applied Elecs., Inc. v. Hong King Grp.,* Ltd., 334 F.R.D. 465, 472 (D. Mass. 2020) (same); *CRS Recovery, Inc. v. Laxton,* No. 06-cv-7093, 2008 WL 11383537, at *2 (N.D. Cal. Jan. 8, 2008) (same).

In full candor to the Court, district courts across the country (including within the Fourth Circuit) are split on whether email service on a Chinese company is permitted under the Hague Convention. *Compare Banilla Games*, 2023 WL 7413329, at *2 (E.D. Va. Nov. 9, 2023) ("[S]ervice via email or postal mail is prohibited because China has objected to Article 10 of the Hague Convention, which otherwise allows for such service."), *with Hayward Indus. v. Blueworks Corp.*, No. 3:20-cv-00710, 2021 U.S. Dist. LEXIS 11894, at *1 (W.D.N.C. Jan. 22, 2021) ("[T]he Hague Convention, as agreed between China and the United States, does not prohibit service by email[.]").

The legal debate among the district courts often hinges on whether Hague Convention—which was created before electronic mail was invented—authorizes email service generally, and if so, whether China's objection to the "mail" service provisions of the Hague Convention can be construed as an objection, or non-objection, to service by email. *See Smart Study*, 620 F. Supp. 3d at 1392–93 ("Thus, there is no dispute that litigants located in China may not be served via postal mail. 'Email,' however, is not mentioned anywhere in the Convention, which long predates the advent of email. The question is whether or not the lacuna of the Hague Convention means that service by email is permitted or prohibited by the Convention."). The better reasoned approach—considering that email did not exist when the Hague Convention was promulgated, China has

8

confirmed its view that email service is prohibited under its conditional agreement to the Hague Convention, *see Smart Study*, 620 F. Supp. 3d at 1395, and China's local laws prohibits email service absent consent through the Chinese Ministry of Justice, *see id*. at 1399—is that email service is not permitted on a Chinese company under the Hague Convention.[1]

Therefore, Roadget's service of process in this case was deficient, as it should be required to serve as required by the Hague Convention. *See Luxottica*, 391 F. Supp. 3d at 827–28 (dismissing Chinese defendants after district court previously authorized email service where the record showed that plaintiff did not exercise reasonable diligence to serve through Hague Convention).

## IV.  MOTION TO COMPEL ARBITRATION

### A. Legal Standard

Under the Federal Arbitration Act (FAA), "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2 The FAA establishes "a liberal federal policy favoring arbitration agreements," *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp*., 460 U.S. 1, 24 (1983), and there is a "heavy presumption of arbitrability" guiding the Court's analysis. *See Mey v. DIRECTV, LLC*, 971 F.3d 284, 292 (4th Cir. 2020).

---

[1] The Third Circuit recently addressed a similar issue (albeit in an unpublished) and concluded that email service in Switzerland was not permitted under the Hague Convention on similar grounds. *See Lahr*, 2024 WL 3518309, at *5 (3d Cir. July 24, 2024) ("Thus, for email service to be permitted in Switzerland, it must be authorized by the Convention's terms. Here, (1) the Convention does not expressly provide for service by email, (2) there is no evidence that the United States and Switzerland have consented to email service under Article 11, and (3) email service under Swiss law is permitted only if the served party consents, and there is no evidence that Megas consented. Thus, email service upon Megas in Switzerland was not permitted under the Convention.").

9

The Fourth Circuit has reduced the propriety of compelling arbitration under the FAA to four elements: "(1) a dispute exists between the parties; (2) the dispute falls within the scope of a written, valid agreement that includes an arbitration provision; (3) the parties' agreement relates to interstate or foreign commerce; and (4) the opposing party has failed or refused to arbitrate the dispute at hand." *Amos v. Amazon Logistics, Inc.*, 74 F.4th 591, 595 (4th Cir. 2023).

## B.  All Elements for Compelling Arbitration Are Met

First, the parties have a dispute over the ownership and use of the asserted copyrighted photographs, which Roadget alleges were obtained from the Shein website.

Second, the dispute falls within the scope of the arbitration clause because Roadget's claim is based on allegations that Defendant accessed—and appropriated the copyrighted photographs from—the Shein website. *See* ECF No. 14 at 5 ("Defendants had access to the Roadget Copyrights because they were publicly displayed in products sold on the SHEIN website and/or app."). Moreover, the Terms governing the Shein website expressly govern accessing, visiting, and browsing the Shein website. *See* Reilly Decl., Ex. A at § 1.1 ("By accessing or using the Services in any manner, including, but not limited to, visiting or browsing the Site . . . , you expressly understand, acknowledge and agree that you have read and understood the Terms and agree to be bound by such terms found on the Site."); § 1.3 ("Any accessing, browsing, or otherwise using the Services indicates your agreement to all the terms and conditions in this Agreement.").[2]

---

[2] Defendant assumes Roadget does not dispute that Singapore law governs the contract formation issues on this motion. *See* Reilly Decl., Ex. A at § 12 ("This agreement and any dispute or claim (including non-contractual disputes or claims) arising out of or in connection with it or its subject matter or formation or the use of the Services shall be governed by and construed in accordance with the laws of Singapore without regard to its conflict of law provisions.").

Likewise, Defendant assumes Roadget does not dispute that, under Singapore law: (1) court proceedings will be stayed in favor of arbitration unless the arbitration clause is clearly invalid or inapplicable; (2) when determining whether the arbitration clause is clearly invalid or inapplicable, Singapore courts will consider whether there is a *prima facie* case that there is a valid arbitration

10

The arbitration clause in the Shein website Terms requires the parties to arbitrate "[a]ny dispute arising out of or in connection with" the Terms or "use of the Services" (which, per sections 1.1 and 1.3 of the Terms, includes "accessing" and "visiting" the Shein website). *See* Reilly Decl., Ex. A at § 12 ("Any dispute arising out of or in connection with this agreement and the use of the Services, including any question regarding its existence, validity or termination, shall be referred to and finally resolved by arbitration administered by the Singapore International Arbitration Centre in accordance with the Arbitration Rules of the Singapore International Arbitration Centre for the time being in force, which rules are deemed to be incorporated by reference in this clause.").

Under these circumstances, Roadget's copyright infringement claim against Defendant fits comfortably within the scope of the arbitration clause. *See, e.g.*, *LDS, Inc. v. Metro Can. Logistics, Inc.*, 28 F. Supp. 2d 1297, 1302 (D. Kan. 1998) (compelling arbitration of copyright infringement claims where the premise of the infringement claim was that the defendant "gained access to the copyrighted [work] because of the parties' contractual relationship under the licensing agreement" and "[u]nder the terms of the licensing agreement, both parties agreed to arbitrate claims 'arising out of or relating to' the licensing agreement"); *see also Mey*, 971 F.3d at 292 ("The heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration. Thus, we must resolve a dispute about the scope of an arbitration agreement in favor of arbitration unless it may be said with positive

---

agreement between the parties; and (3) when a user accesses a website that contains terms of use referring any disputes to arbitration, there is a *prima facie* case that there is a valid arbitration agreement. *See Moreno v Terraform Labs Pte Ltd.*, [2023] SGHC 340 at ¶¶ 120-121, 138-148 (recent decision by the High Court of Singapore concluding that, where the user accessed the website to learn more about the relevant product and the website terms contained an arbitration agreement, there was a *prima facie* case that a valid arbitration agreement existed between the user and the website owner) (available at https://www.elitigation.sg/gd/s/2023_SGHC_340).

11

assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." (internal citations and quotations omitted)).

Third, the Terms relate to interstate and foreign commerce because it governs use of, and access to, the Shein website, which is allegedly owned and operated by Roadget, a Singaporean company, and relates to the sale of products "worldwide." *See* ECF No. 1 at ¶ 8 ("Roadget is a private limited company registered in Singapore. Its SHEIN trademarks are used to sell a wide variety of products worldwide. In the United States, Roadget's affiliate and licensee, Shein Distribution Corporation ('SDC'), sells apparel, beauty products, home goods, pet supplies, and a variety of other products through Roadget's mobile application and its website[.]").

Lastly, Roadget has failed to submit this dispute to arbitration in Singapore pursuant to its own Terms. Therefore, all elements for compelling arbitration under the FAA are met.[3]

---

[3] While Fourth Circuit precedent authorizes district courts to order provisional remedies despite the existence of an agreement to arbitrate, such authority is limited to circumstances where the arbitration process is deemed to be a "hollow formality," *i.e.*, where "the arbitral award when rendered could not return the parties substantially to the *status quo ante*." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1053–54 (4th Cir. 1985).

Here, the Terms require arbitration before the Singapore International Arbitration Centre (SIAC). *See* Reilly Decl., Ex. A at § 12. Contrary to the "hollow formality" contemplated in *Bradley*, the SIAC rules expressly contemplate "interim relief," including "emergency interim relief" if necessary, *see* SIAC Rule 30, which, by rule, must be acted on by an SIAC arbitrator "within 14 days." *See* SIAC Rules, Schedule 1 at § 9 (siac.org.sg/wp-content/uploads/2022/06/SIAC-Rules-2016-English_28-Feb-2017.pdf). Nevertheless, if the Court compels the case to arbitration and Roadget requests that the PI remain in place during the pendency of arbitration, Defendant would not oppose that request.

V.  **CONCLUSION**

Based on the foregoing, Roadget's complaint should be dismissed for insufficient service of process under Rule 12(b)(5), or alternatively, compelled to arbitration pursuant to the Terms governing the Shein website.

Dated: September 11, 2024

/s/ Craig C. Reilly
Craig C. Reilly VSB # 20942
209 Madison Street, Suite 501
Alexandria, Virginia 22314
T: (703) 549-5354
F: (703) 549-5355
E: craig.reilly@ccreillylaw.com

*Counsel for Defendant Shenzhen Chenhong Technology Co., Ltd. (Defendant No. 1 dba "SZCH")*